[No. 10,546.—Department One.]

## THE PEOPLE *v.* LOUIS RAMIREZ.

GRAND JURY — INTERPRETER — INDICTMENT.—A person who is a witness on a criminal charge is not, on that account, incompetent to act as interpreter at the examination of other witnesses in the case before the grand jury.

ID.—ID.—ID.—APPEAL.—An order denying a motion to set aside an indictment, on the ground that such a person acted as interpreter at the examination of witnesses before the grand jury, is not reviewable on appeal by bill of exceptions, or on motion for a new trial, or on motion for arrest of judgment.

CONFESSIONS—EVIDENCE.—A confession made by a prisoner, under the influence of liquor furnished him with the consent of the officer having him in charge, but not influenced by anything said to him by the officer, *held* to be admissible in evidence.

INSTRUCTIONS.—An instruction cited by the Court, *held* to have been properly refused because not predicated on the evidence in the case.

ID.—A judge is not bound to instruct the jury on the history, object, or purpose of the law. He does his duty by saying what the law is, without an exposition of its reasons.

ID.—The Court instructed the jury, that if they found from the testimony that the defendant, soon after the time deceased was killed, if killed at all, concealed himself, or fled from the neighborhood *where deceased was slain,* then that circumstance might be considered by them with the other testimony in the case bearing upon the question of defendant's guilt. *Held,* that this instruction did not assume that the deceased had been killed, but left that fact as the substantial fact in the case for the jury to find.

ID. — CIRCUMSTANTIAL EVIDENCE. — Certain instructions (given below) upon the subject of circumstantial evidence, *held* to be correct.

ID.—When a legal principle has been once announced in the instructions of the Court, there can be no necessity for its repetition, and there can be no error in refusing to give it in a second instruction. The omission to mark the instruction as refused because given already, if an error, is an immaterial one.

IMPEACHMENT OF WITNESS—EVIDENCE.—A witness, introduced to sustain the
    character of a witness whose reputation had been attacked, was asked (by
    the district attorney) the question: "From what you know of him, would
    you believe him under oath?" *Held*, that the question was improper, but
    as it was asked and answered without objection, there was no error.

APPEAL from a judgment of conviction, and an order denying
the defendant a new trial, in the Superior Court of San Bernar-
dino.   ROLFE, J.

*H. M. Willis*, and *J. G. Howard*, for Appellant.

*The Attorney-General*, for Respondent.

McKEE, J. :

The defendant was indicted for murder.   On his arraignment,
his counsel made a motion to set aside the indictment upon the
ground that one Celis, who was a deputy sheriff and had arrested
the defendant, and was also a witness against him, had acted as
interpreter in the examination of witnesses against him before
the grand jury, and was present at the exaination of such wit-
nesses by the grand jury.   The motion was denied, and the rul-
ing is assigned as error.

1.   The presence of the interpreter before the grand jury was
necessary, and the law allowed it.   (Stats. 1871–72, p. 540.)
But it is contended, that one who was the prosecuting witness
against the defendant could not legally act as interpreter
against him.   We know of no reason why a person who is a
witness in a case should be disqualified from acting as interpret-
er at the examination of other witnesses in the case.   It must
be presumed, that the grand jury or district attorney, in acting
under the statute, summoned a fit and proper person as interpret-
er.   The fact that the person summoned was a witness in the
case, or had arrested the defendant, was immaterial.   Doubtless
there were extrinsic reasons which influenced the grand jury in
summoning the particular interpreter.   It may have been that
he was the only one whose services were available, and that but
for him it would have been necessary to postpone the examina-
tion of witnesses, to their inconvenience, the public detriment,
and the delay of justice.   At all events, the selection of an in-
terpreter depends so much upon circumstances, including the

necessities of the case in which the services of one may be required, and of which those who require them are most competent to judge, that a Court should not interfere with the action of those who make the selection; unless it appears there has been a gross abuse of discretion, or that injustice has been done to the defendant. No such showing was made on the motion, and the motion was properly denied. Besides, the order denying the motion is not reviewable on appeal by bill of exceptions (§§ 1170, 1172, 1173, Pen. Code), or on motion for a new trial (§ 1004, id.), or on motion for arrest of judgment (§ 1185, id.; *People* v. *Colby*, 54 Cal. 37).

2. The next assignment of error is, that the Court improperly admitted in evidence a confession made by the defendant, and in its charge to the jury gave an instruction in relation to it, which, it is claimed, was erroneous, and refused to give instructions upon the same subject which were requested by the counsel of defendant.

The confession of the defendant was made to the witness Celis, while the latter had the defendant in custody. Celis was deputy sheriff of Los Angeles County, and arrested the defendant without a warrant, in Kern County. On his way from that county to Los Angeles, with the prisoner, he stopped, about four o'clock in the morning, at Newhall, in Los Angeles County. There the prisoner asked for a drink, and some whisky was brought him. He drank about half a tumblerful, and between that and breakfast he had two more drinks, each of about the same quantity. After breakfast, the officer and the defendant went on horseback to San Fernando, where they arrived between eight and nine A. M., and the defendant had two more drinks of whisky. At San Fernando, the officer obtained a horse and buggy, and drove with the defendant to Los Angeles, where they arrived at eleven o'clock A. M. On the way, the defendant, " feeling pretty lively and talkative," confessed to the officer that he had killed the deceased. This confession was not influenced by anything said to him by the officer. So far as appears by the record, the officer had not spoken to him at all upon the subject. After the confession had been made, the defendant remarked: " All I am afraid of is, when we get to Los Angeles, I will be mobbed and hung." And the officer said to him:

"They won't do anything of the kind." The defendant then asked the officer: "What did people say since I have been gone?" And the officer answered: "They blame you that you went next day and finished him." To which the defendant replied: "I did not. Let them prove it. I killed him because he was a son of a ———."

We think it evident that the confession was the spontaneous suggestion of the defendant's own mind, unmoved and uninfluenced by any inducement, promise, threat, or menace by the officer to obtain it, and there was no abuse of discretion in admitting it as evidence. (*People* v. *Jones*, 31 Cal. 565.) Nor ought the confession to have been excluded because it was made while the defendant was in custody, whether his arrest had been made with or without a warrant. (1 Greenleaf Ev. § 229.)

3. In its charge to the jury, the Court instructed them upon the subject of voluntary confessions, as follows: "A man's declaration or voluntary confession are always admitted in evidence against him when not made under the influence of threats, intimidations, promises, or inducements; for the law presumes that a man will not say anything untrue against himself or his own interests. But the evidence of the oral admissions of a party ought to be viewed with caution." This is a correct exposition of the law. But defendant's counsel requested two additional instructions upon the same subject. One to the effect that the jury were to receive voluntary confessions with great caution and distrust, if they found from the evidence that the defendant was so much under the influence of liquor as to be unconscious of what he was saying, or careless in his expressions, or did not mean to utter the language imputed to him, or did not utter the exact words testified by the officer. The other reiterated the principle of law which had been, substantially, given by the Court; but it set forth *in extenso* the reasons for the rule excepted from 1st Greenl. on Ev. § 214. We think the Court did not err in refusing the first, because it was not predicated upon the evidence in the case (*People* v. *Strong*, 30 Cal. 151), and because it embraced too much. Nor did it err in refusing the second, because, while it is true that principles of law should be stated to a jury in clear and explicit terms, yet, where they are so stated, it is nor necessary, nor is a court

bound to give the grounds and first original causes from whence they have sprung. It is sufficient that the Court correctly gives to the jury the law applicable to the facts of the case. "A judge," says the Supreme Court of Pennsylvania, "is bound to instruct the jury on the law itself, and not on its history, object, or purpose. He does his duty by saying what the law is, without an exposition of its reasons." (*Lincoln* v. *Wright*, 23 Pa. St. 76.)

4. It is next urged, that the Court erred in giving to the jury the following instructions: "Flight or concealment is relevant testimony for the prosecution, and it comes in with other incidents, the death of deceased being proved, from which guilt may be cumulatively inferred; and if you find from the testimony in this case that the defendant, soon after the time deceased was killed, if killed at all, concealed himself, or fled from the neighborhood where deceased was slain, then that circumstance may be considered by you, with the other testimony in the case, as bearing upon the question of defendant's guilt." The principal objection urged against the instruction is the use of the phrase, "deceased was slain;" because it is said to be an assumption of the *corpus delicti.* In *People* v. *Williams*, 17 Cal. 142, the use of the word "victim,"as applicable to the deceased, was considered to be improper, because it seemed to assume that the deceased was wrongfully killed; and because it was nearly equivalent to an expression characterizing the defendant as a criminal. It was therefore held, that a court should not, directly or indirectly, assume the guilt of the accused, nor employ equivocal phrases which may leave such impressions. But in using the word "slain," the Court below did not assume that the deceased had been killed. It left that fact, as the substantial fact in the case, for the jury to find; nor could the word, as employed by the Court in its charge, have left an impression upon the minds of the jurors that the crime for which the defendant was on trial had been actually perpetrated; for the jury were told that if they found the deceased was killed, and that the defendant concealed himself, or fled from the neighborhood where the deceased was slain, it was a circumstance for their consideration, in connection with the other testimony in the case. This was fully in accord with the doctrine as announced in *People* v. *Stanley*, 47 Cal. 118.

5. There was no error in the instructions given to the jury upon the subject of circumstantial evidence. The principles announced in them are fully sustained by *People* v. *Strong,* 30 Cal. 151; *People* v. *Cronin,* 34 id. 191; *People* v. *Bonney,* 19 id. 431; *People* v. *Dick,* 32 id. 213; *People* v. *Murray,* 41 id. 66.

6. Another objection is, that the Court refused to give certain instructions, which were requested by defendant's counsel, upon the question of reasonable doubt. Counsel admit that " these instructions are essentially embraced in the charge of the Court, but are abruptly refused, without the assignment of such reason." When a legal principle has been once announced, there can be no necessity for its repetition, and there can be no error in refusing to give it in a second instruction. A court is not bound to repeat itself in its charge, at the request of counsel. (*People* v. *Hobson,* 17 Cal. 424; *People* v. *Kelly,* 28 id. 423; *People* v. *Strong,* 30 id. 151; *People* v. *Williams,* 32 id. 280.) The omission to mark instructions refused, because they had been given already, if an error, is an immaterial one, which could not prejudice the defendant. For mere abstract and immaterial errors, courts will not reverse a judgment. (*People* v. *Ybarra,* 17 Cal. 166.)

7. The last objection urged is, that the district attorney, in the course of the examination of a witness introduced to sustain the character of Celis, whose reputation had been attacked, asked the witness this question: " From what you know of him, would you believe him under oath?" In *People* v. *Methvin,* 53 Cal. 68, a similiar question was held to be improper; but in this case the question was asked and answered without objection.

There is no error in the record which operated to the prejudice of the defendant, and the judgment and order denying the motion for a new trial are affirmed.

McKinstry, J., and Ross, J., concurred.