[Civil No. 2011. Filed March 31, 1923.]

[213 Pac. 1002.]

J. W. ETTLINGER, Appellant, v. J. C. COLLINS and R. A. BRETHERTON, a Copartnership Doing Business Under the Firm Name and Style of COLLINS & BRETHERTON, Appellees.

1. DEPOSITIONS—DEPOSITION OF ATTORNEY AND RECEIVER HELD ADMISSIBLE TO SHOW STOCK SOLD WAS PART OF VOID ISSUE.—In an action to recover the amount paid for corporate stock which plaintiff alleged was void, so that consideration for the payment had failed, depositions by an attorney and a receiver in another case, in which stock of the corporation had been declared void, identifying the stock involved as part of that declared void, which were based on their personal knowledge of the facts, were admissible, and raised a question of fact for the jury as to the identity of the stock sold by defendants with that previously declared void.

2. CORPORATIONS—STOCK ISSUE WITHOUT SUFFICIENT CONSIDERATION IS VOID.—Under Constitution, article 14, section 6, prohibiting issuance of stock by a corporation, except for money or property received, or for labor done, and making all fictitious increase of stock or indebtedness void, the issuance of stock by a corporation for which no sufficient consideration has been paid is contrary to public policy, and the stock so issued is void.

3. BROKERS—WHETHER DEFENDANTS SOLD STOCK AS OWNERS OR AS BROKERS HELD QUESTION FOR THE JURY.—Where there was evidence indicating that the stock which defendant brokers sold to plaintiff was their own property, though they claimed to have

---

See 4 C. J., p. 1197; 9 C. J., pp. 536, 552, 554; 14 C. J., p. 449; 18 C. J., p. 733; 38 Cyc. 1565, 1576.

acted as brokers only, in the transaction, it was a question for the jury to determine in what capacity they acted.

4. BROKERS—WHETHER DEFENDANTS ACTED IN GOOD FAITH IN SELLING VOID CORPORATE STOCK HELD JURY QUESTION.—In an action to recover the amount paid defendant brokers for corporate stock which had previously been declared void by the courts, it was a question for the jury whether the brokers acted with the utmost good faith, whether they knew of the condition of the corporation, and, if so, how much of their knowledge they had imparted to or withheld from their customer.

5. BROKERS — MUST DEAL WITH PATRON IN UTMOST GOOD FAITH.— Brokers are obligated to deal with their clients or patrons with the utmost good faith, though their liability for sale as brokers is not as great as if they were selling their own stock.

6. TRIAL—DIRECTED VERDICT FOR DEFENDANT REFUSED IF THERE IS ANY COMPETENT EVIDENCE TENDING TO SUPPORT PLAINTIFF'S CASE. Under Civil Code of 1913, paragraph 515, it is the province of the jury to determine the facts, and a motion for a directed or instructed verdict for defendant should be denied where there is any competent evidence tending to support plaintiff's case, though the court may take the case from the jury, if there is no proper evidence to support the issues, or the evidence is controverted, or beyond all reasonable probabilities.

7. TRIAL—MOTION FOR DIRECTED VERDICT TESTED BY SAME RULES AS DEMURRER.—A motion for a directed verdict made by defendant at the close of plaintiff's evidence serves the same purpose and should be tested by the same rules as a demurrer.

8. BROKERS — PURCHASER FROM BROKER OF STOCK PREVIOUSLY DECLARED VOID NEED NOT ALLEGE AND SHOW FACTS INVALIDATING IT.—A purchaser of corporate stock, which had previously been declared void by the courts because issued in violation of Constitution, article 14, section 6, need not, in order to recover the amount paid from the broker who sold the stock, allege and prove the facts and circumstances which showed the stock to be void.

9. APPEAL AND ERROR—NEW TRIAL MUST BE ORDERED WHERE ERROR INTERVENED BEFORE VERDICT.—In a civil action, where parties are entitled to a jury trial, and error has intervened prior to the entry of the judgment for which the cause must be reversed, it must be remanded for a new trial, but, if the error occurred after the verdict, it can be remanded with directions to enter the proper judgment.

APPEAL from a judgment of the Superior Court of the County of Cochise.   A. C. Lockwood, Judge.   Reversed and remanded.

Mr. O. Gibson, for Appellant.

Mr. Fred Sutter and Mr. Walter Roche, for Appellees.

BOLLINGER, Superior Judge.—J. W. Ettlinger, appellant, sued J. C. Collins and R. A. Bretherton, a copartnership doing business under the firm name and style of Collins & Bretherton, appellees, in the superior court of Cochise county, Arizona, for $1,500, because of alleged damages as a result of the sale of certain stock in the Jerome-Portland Copper Mining Company, which company is an Arizona corporation doing business in Yavapai county, Arizona. He alleged that this was a wrongful sale of stock, and that said stock was worthless. The suit was on two causes of action, $1,000 being for stock sold to appellant for which he had paid $710, and $500 was an assigned claim from Louis J. Larsen, he having bought 1,000 shares of the Jerome-Portland Copper Mining Company stock from appellees for $230. The appellant alleged in his complaint that the consideration for the money paid for said stock had wholly failed; that he had made demand upon the appellees prior to the commencement of his action for the return of his money, and that they had refused. He alleged further that, prior to the delivery of the stock to him by the appellees, they had notice that said stock had been adjudged to be fraudulent and void. He alleged that the stock as delivered to him had been issued fraudulently, and without consideration, and that the issue was the result of a conspiracy, and that the stock which had been delivered to him was a part of that issue which had been adjudged fraudulent and void by the superior court of Yavapai county, Arizona, on February 16, 1918, in case No. 6802, in which case J. M. Mahoney and others were plaintiffs, and A. B. Frame and others were defend-

ants, said judgment having been affirmed by the Supreme Court of the State of Arizona as reported in 21 Ariz. 282, 187 Pac. 584. He alleged that, because said certificates which were delivered to plaintiff were bogus and void, they transferred no shares or interest in the Jerome-Portland Copper Mining Company. The appellees defended this action by denying any fraud or wrongdoing upon their part, and setting up that they were merely licensed brokers in the state of Arizona, and were engaged in a general brokerage business, and that, when they furnished the shares of capital stock of the Jerome-Portland Copper Mining Company to appellant and his assignor, they merely acted as brokers and agents, and because of that status, and because they followed the usual customs of the brokerage business, they were in nowise liable for any loss sustained by plaintiff.

The case was tried before a jury, and, after the completion of the testimony of appellant and his witnesses, including the depositions of Joseph H. Morgan and R. B. Westervelt, attorneys of Prescott, upon motion of counsel for appellees, the trial court instructed the jury to return a verdict in favor of the defendants. The jury elected a foreman without retiring from the courtroom, and returned a verdict in favor of the defendants in accordance with the directions of the court.

Counsel for appellant states five assignments of error, and they each and all lead up to the question as to whether or not the appellant herein, plaintiff below, under all the circumstances of this case, made a sufficient showing to entitle him under the law to have his case passed upon by the jury without their being directed by the court to render a verdict in favor of the appellees and against the appellant.

One of the serious questions presented to the court in this case is as to whether or not the trial court

should have admitted as evidence in this case the depositions of Joseph H. Morgan and R. B. Westervelt, of Prescott. These depositions were for the purpose of identifying the stock involved in this case as a part of the stock which was declared void and worthless by the decision in the Frame case. We are inclined to the belief that these depositions were properly admitted. Mr. Morgan was one of the attorneys connected with the Frame litigation, and Mr. Westervelt was attorney for the receiver for the Jerome-Portland Copper Mining Company, and later was receiver for this company. They no doubt had personal knowledge of the facts to which they testified, and their testimony was competent to identify the property which had been condemned by the decision of this court in the Frame case. This testimony as presented in their depositions was competent and proper for the consideration of the jury, and the court below did not err in permitting same to be introduced. If the stock involved in this case were a part of the stock condemned by this court in the Frame case, then the stock involved is invalid and worthless, and the identity of the stock is a question of fact which should have been decided by the verdict of the jury.

Section 6, article 14, of the Constitution of the state of Arizona, reads as follows:

"No corporation shall issue stock, except to bona fide subscribers therefor or their assignees; nor shall any corporation issue any bond, or other obligation, for the payment of money, except for money or property received or for labor done. The stock of corporations shall not be increased, except in pursuance of a general law, nor shall any law authorize the increase of stocks of any corporation without the consent of the person or persons holding the larger amount in value of the stock of such corporations, nor without due notice of the proposed increase having been given as may be prescribed by law. All

fictitious increase of stock or indebtedness shall be void.''

Similar constitutional or statutory provisions may be found in the states of Pennsylvania, Oklahoma, Illinois, California, Nebraska, Kentucky, Alabama, Arkansas, Missouri, Texas, Louisiana, Colorado, South Dakota, Ohio, New York, Wisconsin, Maine, Utah, Indiana, Mississippi, New Jersey, Tennessee, Washington, Oregon, Massachusetts and Iowa. These constitutional and statutory provisions invariably end with the statement, ''All fictitious increase of stock shall be void,'' and in the states which have these provisions it has been uniformly held that stock issued in violation of them is null and void. The provisions seem to be a declaration of public policy, and the decisions are to the effect that any act done in violation of the public policy of the state is null and void. *Jefferson* v. *Hewitt,* 103 Cal. 624, 37 Pac. 638; *Kellerman* v. *Maier,* 116 Cal. 416, 48 Pac. 377; *Arkansas River etc. Co.* v. *Farmers' Loan etc. Co.,* 13 Colo. 587, 22 Pac. 954; *Lake St. El. R. Co.* v. *Ziegler et al.,* 99 Fed. 114, 39 C. C. A. 431; *First Ave. Land Co.* v. *Parker,* 111 Wis. 1, 87 Am. St. Rep. 841, 86 N. W. 604; *Altenberg* v. *Grant et al.,* 85 Fed. 345, 29 C. C. A. 185; *Webster* v. *Webster Refining Co. of Okmulgee,* 36 Okl. 168, 47 L. R. A. (N. S.) 697, 128 Pac. 261; *Clark* v. *Lincoln Lumber Co.,* 59 Wis. 655, 18 N. W. 492; *Frame* v. *Mahoney,* 21 Ariz. 282, 187 Pac. 584; *Lee* v. *Cameron* (Okl. Sup.) 169 Pac. 17; *Walton* v. *Standard Drilling Co.,* 43 S. D. 576, 181 N. W. 96; Wigmore on Evidence, pars. 650, 654, 658, and cases cited therein. In the case of *Handley* v. *Stutz,* as reported in 139 U. S. 417, 35 L. Ed. 227, 11 Sup. Ct. Rep. 530 (see, also, Rose's U. S. Notes), the Supreme Court of the United States used the following language:

''The stock of a corporation is supposed to stand in the place of actual property of substantial

value, and as being a convenient method of representing the interest of each stockholder in such property, and to the extent to which it fails to represent such value it is either a deception and fraud upon the public or an evidence that the original value of the corporate property has become depreciated. . . . If it be once admitted that a corporation may issue stock without receiving a consideration therefor, and where it does not represent actual or substituted value in corporate assets, there is apparently no limit to the extent to which the original stock may be 'watered,' except the caprice of the stockholders.''

Furthermore, it appears to the court, in addition to the question as to whether or not this stock was null and void, that the liability of appellees might also depend upon whether or not they were acting simply as brokers in this case as they allege, or were acting for themselves and selling their own stock to the appellant and his assignor. It was for the jury to say under the facts and circumstances of this case just what was the true situation. It was for the jury to say whether or not the appellees acted with the utmost good faith, whether or not they knew anything about the condition of the Jerome-Portland Copper Mining Company, and, if they did know, just how much of their knowledge they had imparted to or withheld from the appellant. Even a broker has some liabilities, and is obligated to deal with his client or patron in the utmost good faith. If appellees were selling their own stock, as some of the testimony would indicate, their liability was greater than if they were merely acting as agents or brokers. Their status and liability should have been determined by the verdict of the jury under the instructions of the court. It is strictly within the province of the jury to determine the facts, as it is within the province of the court to state the law. Arizona Civ. Code 1913, par. 515, p. 353; *Arizona* v. *Kay,* 3 Ariz. 92, 21 Pac. 152; *Jordan* v. *Duke,* 4 Ariz. 278, 36 Pac. 896;

*Kastner* .v. *Campbell,* 6 Ariz. 145, 53 Pac. 586; *Castle*
v. *Bullard,* 23 How. 172, 16 L. Ed. 424 (see, also,
Rose's U. S. Notes); *Slocum* v. *New York Life Ins.*
*Co.,* 228 U. S. 364, Ann Cas. 1914D, 1029, 57 L. Ed.
879, 33 Sup. Ct. Rep. 523; *Jansen* v. *Williams,* 36 Neb.
869, 20 L. R. A. 207, 55 N. W. 279; *Jennings* v. *Trum-*
*mer,* 52 Or. 149, 132 Am. St. Rep. 680, 23 L. R. A.
(N. S.) 164, 96 Pac. 874; *Butler* v. *Baker,* 17 R. I. 582,
33 Am. St. Rep. 897, 23 Atl. 1019; *Holst* v. *Stewart,* 161
Mass. 516, 42 Am. St. Rep. 442, 37 N. E. 755; *Holmes* v.
*Cathcart,* 88 Minn. 213, 92 N. W. 956; *Carter* v.
*Owens,* 58 Fla. 204, 50 South. 641; *Switzer* v. *Skiles,*
3 Gilm. (Ill.) 529, 44 Am. Dec. 723; *Herman* v. *Mar-*
*tineau,* 1 Wis. 151, 60 Am. Dec. 368.

It is within the authority of a trial judge to with-
draw a case from the jury when there is no proper
evidence to support the issues, or he may direct a
verdict for failure of the evidence, or, where the
evidence is uncontroverted or beyond all reasonable
probabilities, but where there is any competent evi-
dence which tends to support the plaintiff's case, a
motion for a directed or instructed verdict should
be denied. In many states the practice of directing
a verdict has superseded the demurrer. It serves
the same purpose, and should be tested by the same
rules. Counsel for appellees in this case contend
that the trial court did not err in giving a directed
verdict in this case because, if they had had a chance
to be heard on their demurrer, the result would have
been the same. Their contention is that the com-
plaint does not state a cause of action because it
does not set up the facts and circumstances which
show the involved stock to be null and void. If their
contention should be sustained, it would mean that
the appellant in this case, who was the plaintiff be-
low, would have to sustain the burden of alleging and
proving the things which were alleged and proven in

the Frame case. The status of this stock had been established by litigation in the Frame case in the superior court at Prescott, which judgment was affirmed by the Supreme Court. In a civil action where parties are entitled to a jury trial, an appellate court can only reverse the judgment and remand the case with directions to the trial court to enter the proper judgment therein where the error occurred after the verdict was entered; but where the error has intervened prior to the entry of the judgment, and the cause is reversed therefor, it must be remanded for a new trial. *Anthony* v. *Wheeler,* 130 Ill. 128, 17 Am. St. Rep. 281, 22 N. E. 494; *Pleasants* v. *Fant,* 22 Wall. 116, 22 L. Ed. 780 (see, also, Rose's U. S. Notes); *Foster* v. *Shepherd,* 258 Ill. 164, Ann. Cas. 1914B, 572, 45 L. R. A. (N. S.) 167, 101 N. E. 411; *Schuchardt* v. *Allen,* 1 Wall. 359, 17 L. Ed. 642; *Rigdon* v. *More,* 242 Ill. 256, 134 Am. St. Rep. 328, 89 N. E. 992.

Because of the error complained of to the prejudice of appellant, the judgment must be reversed and a new trial granted. It is so ordered.

McALISTER, C. J., and ROSS, J., concur.